IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| AUTO OWNERS INSURANCE COMPANY, )<br>a mutual insurance company incorporated )<br>in Michigan, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>WALTER KEAL SELMAN, )<br>)<br>Defendant. ) | Civil Action Number<br><br>00-C-0556-W |

MEMORANDUM OPINION

Plaintiff Auto-Owners Insurance Company ("Auto-Owners") brings this action seeking a declaratory judgment that the farm tractor being used by Defendant at the time of an accident is not a "temporary substitute vehicle" within the meaning of the policy issued to Defendant's employer. Based on the evidence presented at trial, the Court will declare that the tractor was indeed used as a temporary substitute vehicle.

I

On January 5, 1998, one of Defendant Walter Keal Selman's ("Selman") job assignments was to haul diesel fuel to a pump being used to fill a lake in Pickens County, Alabama. Selman drove a dump truck for this purpose. The dump truck was owned by Selman's employer, Amason & Associates ("Amason").

As Selman drove the truck across a field, it became stuck in the mud and disabled to

travel further. Selman then went to a barn and retrieved a farm tractor, owned by Robert Amason - presumably the president and principal shareholder of Amason & Associates. Selman proceeded to engage the tractor to pull the truck out of the mud hole - a distance of a few yards at the most. But indubitably, the tractor was used to pull forward, albeit only a short distance, the disabled dump truck and the diesel fuel it carried.

After the dump truck had been pulled out of the mud hole, and as Selman was returning the tractor back to the barn, the tractor was struck from the rear by an automobile being driven by a Margaret King. Selman suffered bodily injuries as a result of the accident.

In the event that the tractor had been unable to pull the truck out of the mud hole, Selman had intended to use it for transportation to the nearest telephone, where he would have summoned further assistance.

At the time of the accident, a policy of automobile liability insurance had been issued to Amason & Associates by Auto-Owners, covering certain listed automobiles, including the dump truck driven by Selman.

The policy defines the term "automobile" as "a private passenger automobile, a truck, truck tractor, farm implement or other land motor vehicle." Plaintiff's Exhibit ("PX") 1, Section I, ¶ 1, p. 1. The policy also contains a "substitute vehicle" provision, which reads, in relevant part:

> The Liability Coverage provided for **your automobile** also applies to certain other **automobiles**. It applies:
>
> (1) to an **automobile you** do not own which is temporarily used as a substitute for **your automobile**. **Your automobile** must be out of use because of breakdown, repair, servicing, loss or destruction.

*Id.,* Section II, ¶ 1, c. (emphasis original).

While the policy defines the term "you" or "your" as meaning "the first name insured shown in the declarations....," the coverage provision is clear:

> We will pay damages for **bodily injury** and **property damage** for which **you** become legally responsible because of or arising out of the ownership, maintenance, or use of **your automobile** as an **automobile**. **We** will pay such damages:
>
> (1) on **your** behalf;
> ....
> (3) on behalf of any other person using **your automobile** with **your** permission;
> ....

*Id.,* Section II, 1. a. (emphasis original).

Auto-Owners had also provided uninsured motorist coverage for Amason & Associates, which obligates the insurance company to "pay damages any person is legally entitled to recover ... for bodily injury sustained while occupying or getting into or out of an automobile that is covered by SECTION II - LIABILITY COVERAGE of the policy." PX 3, p.1.

II

To deny coverage under the facts of this case, Auto-Owners must establish either that 1) its insured owned the farm tractor, 2) the tractor was not temporarily used as a substitute for the dump truck, or 3) the dump truck was not out of use because of breakdown, repair, servicing, loss, or destruction. *McKee et al. v. Exchange Ins. Ass'n*, 120 So.2d 690 (Ala.1960); *Safeco Ins. Co. of America v. Banks*, 152 S0.2d 666 (Ala. 1963). It is hornbook Alabama law that any ambiguities in the language of the policy are to be resolved in favor of the insured.

III

Auto-Owners concedes that the covered vehicle (i.e., the dump truck) was out of use. In its brief, it contends that 1) the tractor Selman was operating at the time of the accident was owned by the named insured, and 2) the farm tractor was not a "substitute vehicle." There is no evidentiary basis for either of these contentions.

Auto-Owners' brief asserts that "[i]t is undisputed that he tractor Selman was operating was owned by Amason and that Amason was listed as the first named insured on the declarations page of the policy." Plaintiff's Brief, p. 3. While the evidence certainly reflects that Amason, the individual, owned the tractor, the policy's Declarations Pages, embodied in PX 2, each reflect that "Amason & Associates, Inc." - the corporation - is the only named insured. There are five such pages in PX 2, and Amason the individual is never shown on any of them as the insured.

Auto-Owners' advances the arguments that the tractor was not being used as a temporary vehicle because 1) it was not used for the same purpose as the dump truck, and 2) it was being returned to the barn at the time of the accident. On the "same purpose" argument, the fact is that while the dump truck assuredly was being used to transport diesel fuel, the tractor facilitated that purpose. As the tractor pulled the dump truck from the mud hole, it was effectively transporting the diesel fuel which had been loaded onto the truck. The truck and the tractor were thus engaged in a common goal - to facilitate the transportation of the diesel fuel to the pump.

Put another way, Auto-Owners' second argument is that in any event, the tractor ceased being a substitute vehicle once the dump truck had been pulled from the mud hole and restored to use. The policy is silent on whether coverage ceases immediately upon the restoration of the insured vehicle or whether it continues until the temporary substitute vehicle has been returned to its home. Selman's incidental undertaking of returning the tractor to the barn is therefore not

expressly excluded from coverage under the policy. Had Auto-Owners wished to exclude coverage for this activity incidental to the temporary use of a substitute vehicle, it could have so written the policy. Construing the policy in a light more favorable to the insured leads to the conclusion that the return of the substitute vehicle to its home does not bar coverage.

In summary, the Court finds and concludes that Amason & Associates, Inc. - the insured- did not own the tractor, and that th tractor was temporarily used as a substitute for the insured dump truck.

By separate order, declaratory judgment shall issue in favor of the Defendant.

Done this 26th day of September, 2001.

Chief United States District Judge
U.W. Clemon

*******************

After this Opinion had been drafted and while it was being proofread, Plaintiff's counsel filed a "Motion to Supplement the Record." At the time the motion was filed, the parties had rested their respective cases, the case had been argued, and it was under submission. Under these circumstances, the "motion to supplement the record" is singularly inappropriate.

In the first place, the trial was over. There is nothing to supplement, as the record was complete when the case was taken under submission. Secondly, the Pugh Affidavit controverts the parties' stipulation; and, as such, it would not have been received in evidence had it been

offered at trial. Third, Pugh was not listed as a witness by either his party, and the Court would have sustained an objection to his testimony based on the failure to comply with the Pretrial Order. Finally, the Pugh Affidavit would not have been received in evidence had it been offered because it is quintessentially *ex parte*. The Defendant has not had an opportunity to examine him on this crucial issue.

The Motion to Supplement the Record is hereby unhesistatingly DENIED.

Done this 26th day of September, 2001.

_____
Chief United States District Judge
U.W. Clemon

************************